Argued and submitted March 3, decision of Court of Appeals reversed and case remanded to Court of Appeals for further proceedings April 6, 2000

See 169 Or App 216, 9 P3d 719 (2000)

George F. HAMEL,
*Petitioner on Review,*

*v.*

Dan JOHNSON,
Superintendent,
Snake River Correctional Institution,
*Respondent on Review.*

(CC 97-05-28-838-M; CA A100349; SC S46332)

998 P2d 661

Bob Pangburn, Caldwell, Idaho, argued the cause and filed the petition for petitioner on review.

Kelly Knivila, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Eric M. Cumfer, Salem, filed a brief for *amicus curiae* Oregon Criminal Defense Lawyers Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Leeson, and Riggs Justices.**

LEESON, J.

---

** Kulongoski, J., did not participate in the consideration or decision of this case.

### LEESON, J.

In this habeas corpus proceeding, ORS 34.310 *et seq.*, the Court of Appeals dismissed as moot petitioner's challenge to a January 1997 order of the Board of Parole and Post-Prison Supervision (Board). *Hamel v. Johnson*, 158 Or App 276, 974 P2d 260 (1999). *See* ORS 34.310 (allowing prosecution of writ of habeas corpus to inquire into cause of imprisonment). For the reasons that follow, we reverse the decision of the Court of Appeals and remand the case to that court for further proceedings.

In 1991, petitioner was convicted of two counts of first-degree sodomy, ORS 163.405, for crimes that he committed in 1988. Petitioner was sentenced to consecutive 10- and 20-year terms of imprisonment in the custody of the Oregon Department of Corrections (Department). Because petitioner had committed his crimes before November 1, 1989, he was subject to the parole matrix system that the legislature had established in 1977. Or Laws 1997, ch 372, §§ 1-18. Under that system, "[t]he legislature * * * authorized the Board to determine the actual duration of an inmate's imprisonment." *Price v. Board of Parole*, 300 Or 283, 288, 709 P2d 1075 (1985).

Petitioner was assigned to the Snake River Correctional Institution. Following his admission, the Board held a hearing to set petitioner's parole release date. *See* ORS 144.120(1) (directing Board to hold hearing to set initial release date after admission of inmate to any Department institution). After that hearing, the Board set petitioner's scheduled parole release date for May 29, 1997. On January 23, 1997, however, the Board issued an order postponing petitioner's scheduled release until May 29, 1999.[1]

---

[1] The Board relied on ORS 144.125(3) in postponing petitioner's parole release date. Between 1981 and 1993, ORS 144.125(3) provided:

"If a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner, the board may order the postponement of the scheduled parole release until a specified future date." In 1999, the legislature amended ORS 144.125. Or Laws 1999, ch 141, § 1.

Unless otherwise indicated, we refer to this version of the statute as ORS 144.125(3), because that is the version that was in effect when petitioner committed his crimes.

On May 28, 1997, petitioner filed the present habeas corpus proceeding in the Malheur County Circuit Court, alleging that he was imprisoned unlawfully because the Board had extended his scheduled parole release date in violation of both state and federal prohibitions against *ex post facto* laws.[2] *See Bedell v. Schiedler*, 307 Or 562, 567, 770 P2d 909 (1989) (habeas corpus used to determine whether person being held lawfully). The trial court issued the writ, respondent filed a return, and petitioner filed a replication, again alleging that the Board's action postponing his parole release date violated state and federal *ex post facto* prohibitions. The trial court rejected petitioner's *ex post facto* argument:

> "It appears to this court based on the evidence before it that the parole Board made its decision based on the law in effect *at the time the defendant was convicted* and therefore plaintiff has not met his burden of proof."

(Emphasis added.) The court denied habeas corpus relief and entered judgment for respondent. Petitioner appealed.

In October 1998, while petitioner's appeal was pending, the Board issued another order postponing petitioner's scheduled parole release date. In issuing that order, the Board relied on information that had not been available to it when it issued its 1997 order, including a psychological evaluation of petitioner that was performed in 1998.

After the Board issued the 1998 order, respondent moved to dismiss petitioner's appeal. Respondent argued

---

In 1993, the legislature amended ORS 144.125(3), Or Laws 1993, ch 334, § 1. Between 1993 and 1999, ORS 144.125(3) provided:

> "If the board finds the prisoner has a mental or emotional disturbance, deficiency, condition or disorder predisposing the prisoner to the commission of a crime to a degree rendering the prisoner a danger to the health or safety of the community, the board may order the postponement of the scheduled parole release date until a specified future date."

In 1999, the legislature further amended ORS 144.125. Or Laws 1999, ch 141, § 1. The 1999 amendments are not relevant to this case.

[2] Petitioner argued that the Board had applied the 1993 version of ORS 144.125(3), rather than the pre-1993 version, and that, because ORS 144.125(3) is more onerous than the pre-1993 version, application of the 1993 version violated the prohibition against *ex post facto* laws. As support for that argument, petitioner cited *Meadows v. Schiedler*, 143 Or App 213, 219-20, 924 P2d 314 (1996), *rev den* 325 Or 367 (1997), which held that retroactive application of ORS 144.125(3) violates the prohibition against *ex post facto* laws.

that the 1998 order had superseded the 1997 order and that any decision regarding the legality of the 1997 order would resolve only an "abstract question." Accordingly, respondent contended, petitioner's appeal should be dismissed as moot. The Court of Appeals granted respondent's motion. *Hamel*, 158 Or App at 281.[3] This court allowed the petition for review to determine whether, under the foregoing circumstances, the Court of Appeals erred in dismissing petitioner's appeal of the 1997 order as moot.[4]

█    Appellate courts are prohibited from deciding abstract, hypothetical, or contingent questions. *Gortmaker v. Seaton*, 252 Or 440, 442, 450 P2d 547 (1969). A court's decision on a matter must have some practical effect on the rights of the parties to the controversy. *Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1194 (1993). Even if a case otherwise is justiciable, if the court's decision "no longer will have a practical effect on or concerning the rights of the parties," then the matter will be dismissed as moot. *Id.* at 406. For example, a case becomes moot when an event occurs that "render[s] it impossible for the court to grant effectual relief." *Greyhound Park v. Ore. Racing Com.*, 215 Or 76, 79, 332 P2d 634 (1958).

█    As noted, respondent contends that the Board's 1998 order "superseded" the 1997 order, thereby making petitioner's appeal from the trial court's denial of his petition for a writ of habeas corpus moot. Even assuming that the 1997 order was invalid, respondent argues, the Board was entitled

---

[1] The Court of Appeals relied on *Jones v. Thompson*, 156 Or App 226, 968 P2d 380 (1998), in holding that the October 1998 Board order rendered moot petitioner's appeal from the January 1997 order. In *Jones*, a divided Court of Appeals, sitting *en banc*, held that a subsequent order of the Board supersedes a previous order, thereby rendering the first order moot. *Id.* at 230. After this court had allowed review in this case, the petitioner in *Jones* also sought review. This court has held in abeyance the petition for review in *Jones* pending resolution of this case.

[1] On the day of oral argument in this case, respondent submitted a supplemental memorandum informing the court that petitioner also had filed a petition for a writ of habeas corpus challenging the Board's 1998 order. After reviewing the Board's 1998 order, the circuit court dismissed the petition. According to respondent, the Board's 1998 order provided petitioner "with all of the relief that he would have been entitled to receive had he prevailed in this action before it became moot." That petitioner also sought relief in habeas corpus from the Board's 1998 order does not affect our analysis in this case. Petitioner remains entitled to challenge the validity of any Board order that allegedly has resulted in his being held in prison unlawfully.

to issue the 1998 order, because, in respondent's view, the Board was not *required* to release petitioner on parole until the expiration of his 20-year indeterminate sentence.

Petitioner responds that ORS 144.245 (1987) required the Board to release him on parole on his scheduled release date, unless the Board had a valid reason to postpone that release date. According to petitioner, the Board did not have a valid reason to postpone his release date, because it applied the incorrect version of ORS 144.125(3) in making the decision to do so. If the Board had applied the correct version of that statute, petitioner asserts, then it would have concluded that he did not suffer from a "severe emotional disturbance such as to constitute a danger to the health or safety of the community," ORS 144.125(3) (1987), and it would have released him on parole on May 29, 1997. If petitioner had been released on parole, he reasons, then he would not have been in prison in 1998, and the Board could not have issued the 1998 order. Therefore, petitioner argues, the 1998 order did not render moot his challenge to the 1997 order.

The Court of Appeals majority agreed with respondent that the 1998 order superseded the 1997 order, thereby rendering moot petitioner's appeal from the 1997 order. *Hamel*, 158 Or App at 281. The majority relied on its decision in *Jones v. Thompson*, 156 Or App 226, 968 P2d 380 (1998), where it had held that an indeterminate sentence authorizes the Department to retain custody of a prisoner until he or she has served out the sentence, "either by serving it in the custody of [the Department] or by serving it on parole." *Jones*, 156 Or App at 231. Under that view, any Board order setting a release date has no legal effect until the end of the indeterminate sentence. Our review of the relevant statutes satisfies us that the foregoing view misapprehends the nature of the indeterminate sentencing scheme that was in effect when petitioner was sentenced.

■■ As noted, petitioner was sentenced under the parole matrix system that went into effect in 1977. *See* Or Laws 1977, ch 372, §§ 2-6 (describing system). Under that system, a trial court imposed an indeterminate sentence of a specified duration on a defendant who had been convicted of a crime. An indeterminate sentence stated only a maximum term to

be served under the jurisdiction of the Department of Corrections. Such a sentence did not establish the length of time that a defendant was to be incarcerated. *Harris v. Board of Parole*, 288 Or 495, 503, 605 P2d 1181 (1980). Regardless of the length of an indeterminate sentence, under ORS 144.780 and ORS 144.785, "it is the [Board] that determines the actual duration of imprisonment." *Id.* In other words, for prisoners sentenced under the matrix system, the Board, not the court, determines the actual duration of imprisonment. *Price*, 300 Or at 288. *See also* OAR 213-002-0001(3)(b) ("Although many citizens believe the indeterminate sentence sets the length of imprisonment, that sentence only sets an offender's maximum period of incarceration and the matrix controls actual length of stay.").

In sum, under the matrix system, the parole release date that is set by the Board, not the indeterminate sentence, establishes how long a prisoner will be incarcerated. The indeterminate sentence merely provides the outermost limit of the Board's authority over the length of a prisoner's term of incarceration.

A brief summary of the workings of the parole matrix system helps to explain why, in this case, petitioner's appeal from the Board's 1997 order did not become moot when the Board issued its 1998 order. ORS 144.120(1) directs the Board to conduct a hearing within six months to a year after the prisoner has arrived in a correctional facility and to set an initial parole release date "pursuant to ORS 144.780." ORS 144.780, in turn, directs the Board to adopt rules establishing "ranges of duration of imprisonment to be served for felony offenses prior to release on parole." Under the Board's rules, the "ranges of duration" referred to in ORS 144.780 are known as the "matrix ranges." OAR 255-005-0005(28) (1998). The matrix ranges identify the ranges of months within which the Board has discretion to set a prison term. *Id.*

In 1985, the legislature added the following provision to the parole matrix scheme:

"When the [Board] has set a date on which a prisoner is to be released upon parole, *the prisoner shall be released on that date unless the prisoner on that date remains subject to an unexpired minimum term during which the prisoner is*

> *not eligible for parole*, in which case the prisoner shall not
> be released until the expiration of the minimum term."

ORS 144.245(1); Or Laws 1985, ch 53, § 2 (emphasis added).
Under that statute, if a prisoner does not have an unexpired
minimum term, then the prisoner *must* be released on the
scheduled release date. *Cf. Collins v. Foster*, 299 Or 90, 94,
698 P2d 953 (1985) (under release provision of ORS 136.290,
"shall release" is mandatory, affording no discretion); *see also
Greenholtz v. Nebraska Penal Inmates*, 442 US 1, 11-12, 99 S
Ct 2100, 60 L Ed 2d 668 (1979) (state parole statutes phrased
in mandatory terms create liberty interest in parole release
date). However, in addition to the condition stated in ORS
144.245 for postponing a release date, ORS 144.125 (1987)
lists three additional grounds on which the Board either may
or shall postpone a release date: "serious misconduct during
confinement," ORS 144.125(2) (1987); the presence of a
"severe emotional disturbance such as to constitute a danger
to the health or safety of the community," ORS 144.125(3)
(1987); and an inadequate parole release plan, ORS
144.125(4) (1987). Any one of the statutory reasons for post-
poning a release date, if valid, suffices to postpone a sched-
uled parole release date.

In this case, consistent with ORS 144.120(1), after
petitioner had arrived in the corrections facility, the Board
held a hearing to set his initial parole release date. Applying
the matrix range, the Board set May 29, 1997, as petitioner's
initial release date. Under ORS 144.245(1), the Board was
required to release petitioner on parole on that date unless
the Board identified a valid reason for postponing his release.
In 1997, the Board issued an order identifying one of the stat-
utory reasons for postponing petitioner's parole release date,
namely, that he suffered from "a present severe emotional
disturbance [*sic*] that constitutes a danger to the health or
the safety of the community."

In his habeas corpus petition, petitioner alleged that
the reason that the Board gave for postponing his release
date was not valid. As noted, under ORS 144.245, the Board
was required to release petitioner on parole on the scheduled
release date unless it had a valid reason for postponing that
release date. Respondent does not contend that petitioner

was subject to an unexpired minimum term. Therefore, if petitioner were to prevail on his claim that the Board's reason for postponing his release date under ORS 144.125(3) was not valid, then the Board should have released him on parole on May 29, 1997, and his continued imprisonment is unlawful. The Board is not entitled to rely on evidence and reasons that it acquired after that date to justify its decision not to release petitioner then. In other words, in this case, the Board could not rely on petitioner's 1998 psychological evaluation to justify its decision to postpone petitioner's 1997 parole release date.

Under those circumstances, petitioner's appeal challenging the validity of the Board's 1997 order did not become moot when the Board issued its 1998 order. If the Board did not have a valid reason for postponing petitioner's 1997 parole release date, then it should have released him on parole. Respondent concedes that, if petitioner had been released on parole, then the Board could not have issued its 1998 order. The Court of Appeals therefore erred in dismissing the appeal as moot, and the case must be remanded to that court for it to address petitioner's claim that the Board improperly postponed his May 27, 1997, parole release date.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.