Submitted on record and briefs on remand from the Oregon Supreme Court June 8, reversed and remanded with instructions July 26, 2000

## GEORGE F. HAMEL,
*Appellant,*

*v.*

## Dan JOHNSON,
Superintendent,
Snake River Correctional Institution,
*Respondent.*

(97-05-28838M; CA A100349)

9 P3d 719

Bob Pangburn, Caldwell, Idaho, for appellant.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Kelly Knivila, Assistant Attorney General, for respondent.

Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

This habeas corpus case is before us on remand from the Supreme Court. *Hamel v. Johnson*, 330 Or 180, 998 P2d 661 (2000). Plaintiff argues that his incarceration is unconstitutional because he is legally entitled to release on parole. We originally dismissed the appeal as moot, *Hamel v. Johnson*, 158 Or App 276, 974 P2d 260 (1999). The Supreme Court reversed that holding and at the same time remanded the case to us for a decision on the merits. We reverse the trial court's decision denying plaintiff's petition and instruct it to order plaintiff's release on parole.

In 1991, plaintiff was convicted of two counts of first-degree sodomy, ORS 163.405, for which he received consecutive 10- and 20-year sentences. Applying the matrix system then in effect, *see* ORS 144.780, the Board of Parole and Post-Prison Supervision (the Board) established his parole release date as May 29, 1997. However, it issued an order on January 23, 1997, extending the release date until May 29, 1999. Plaintiff brought this action to challenge that order, contending that because he does not suffer from a severe emotional disturbance as is required to extend his release date, *see* ORS 144.125, he is entitled to release on parole.

While his appeal was pending, the Board issued a second order extending petitioner's release date until May 31, 2001. We originally held that this case was moot on the ground that the second order superseded the first order and deprived it of any continuing effect. 158 Or App at 281. In reversing our holding to that effect, the Supreme Court concluded that the Board was required to order plaintiff's release unless the first order was valid. If that order was invalid, there would have been no occasion for a second order. It also held that only evidence that was before the Board on the original release date is relevant to the validity of the first order. 330 Or at 187-88.

The issue before us on remand is whether the first order is valid. The Board's authority to extend plaintiff's parole release date is derived from the version of ORS 144.125(3) that was in effect between 1981 and 1993. That

statute authorizes the Board to extend the date "[i]f a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner[.]" Without that diagnosis, the Board has no authority to extend a release date, and the prisoner must be released on parole. *See* ORS 144.245(1); *Hamel*, 330 Or at 187. We have previously held that, in the absence of a more restrictive rule, the Board is entitled to review all of the evidence before it and draw its own conclusions about whether a prisoner's condition meets the statutory standard. *See Peek v. Thompson*, 160 Or App 260, 980 P2d 178, *rev dismissed* 329 Or 553 (1999); *Weidner v. Armenakis*, 154 Or App 12, 959 P2d 623 (1998), *withdrawn by order* July 13, 1998, *reasoning reaffirmed and readopted in Merrill v. Johnson*, 155 Or App 295, 964 P2d 284, *rev den* 328 Or 40 (1998).

In this case, the only evidence that the record indicates was before the Board on May 29, 1997, other than the fact of plaintiff's convictions, was a report from Dr. Starr, a clinical psychologist. It is also the only evidence that defendant discusses in defending the Board's order. We therefore limit our review to whether that report is sufficient to permit the Board to find that plaintiff met the statutory criteria. *See Peek* at 269.[1]

According to Starr, plaintiff readily discussed his crime during his interview with Starr and recognized that he had harmed the victims. He denied any other similar offenses, and there is no evidence that any had occurred. Plaintiff was in a treatment program for sex offenders that he indicated was important to him. His psychological test results demonstrate profiles similar to those of persons who are frequently self-centered and selfish, who are angry, and who tend to blame others for life's problems. However, other tests also suggest that plaintiff has the ability to make constructive, commonsense decisions and to think abstractly. In

---

[1] Plaintiff also relies on *former* OAR 255-60-012, which was in effect at the time of his crimes and which, he asserts, requires a clinical diagnosis of dangerousness in the psychiatric or psychological report before the Board may extend a parole release date. Because of our conclusion that Starr's report does not support the Board's order, we do not need to discuss that argument.

addition, he scored in the sixth percentile on a test for psychopathic tendencies; that score suggests that he is likely to have some capability for empathy and that his behavior is generally predictable. Starr declined to make an Axis I (clinical disorder) diagnosis and made an Axis II (personality disorder) of Personality Disorder Not Otherwise Specified with narcissistic and passive/aggressive features (DSM IV 201.9). He summarized his conclusions:

"George Hamel has a strong sense of entitlement. When he committed his crime, he was not able to see beyond his sexually exploiting two eleven year old girls as anything other than 'recreational sex.' He was slow to acknowledge his responsibility for the crime. Over time, however, it is this examiner's impression that Mr. Hamel has begun to take responsibility for his crime and participate in sex offender day treatment. He is cognizant of the negative effects of his behavior on his victims, even though he does not entirely recognize his potential for reoffense. He is unhappy and anxious.

"Even though Mr. Hamel's basic personality structure does not appear to have changed since a previous examination, it is notable that he does acknowledge that he has harmed his victims. He has taken the initiative to develop potential referral sources in Florida, if he were to be paroled.

"In sum, it is this examiner's impression that George Hamel's acknowledgment of his harm to his victims mitigates significantly the short sightedness associated with his personality disorder. Since he has been in prison no other victims have been discovered. He has cooperated with and benefited [sic] from his treatment opportunities. Although there certainly is some risk for reoffense, it is this examiner's impression that Mr. Hamel's parole plan and current benefit from treatment combine to minimize the risk to the community, if he is to be paroled.

"It is strongly recommended that any parole plan include lengthy outpatient treatment associated with his sexual offense history and proclivities."

The version of ORS 144.125(3) that applies to plaintiff requires a diagnosis of a "present severe emotional disturbance such as to constitute a danger to the health or safety of the community" before the Board may extend a parole

release date. Unlike the report in *Peek*, which we held permitted but did not compel such a diagnosis, 160 Or App at 269, Starr's report cannot support that conclusion. In *Peek*, the report indicated that the plaintiff " 'would probably call attention to himself because of the intensity with which he expresses feelings,' " " 'has a very negative, angry attitude toward the environment,' " and tended to "misinterpret his perceptions and to act inappropriately, in part because of excessive negativism and anger." Those and other portions of that report could lead to a conclusion that the plaintiff in *Peek* had a "severe emotional disturbance." In contrast, there is nothing in Starr's report that suggests that plaintiff's problems reach that level of severity. At most, Starr made positive statements about improvement mixed with continuing concerns in a way that indicated a need to ensure that plaintiff maintained and continued his progress after release. Although Starr diagnosed a personality disorder, nothing in his opinion suggests that that disorder was "severe" as required by the statute. We conclude that plaintiff satisfied his burden of proving by a preponderance of the evidence that the Board's order postponing his May 27, 1997, release date was not supported by substantial evidence and accordingly, that the trial court erred in dismissing plaintiff's writ of habeas corpus.

◼     Defendant also argues that we should not consider plaintiff's challenge to the sufficiency of the evidence because plaintiff's petition failed to allege sufficient facts for relief. Under ORS 34.360, the petition must state that the party in whose behalf the writ is petitioned is imprisoned, that the person is not imprisoned by virtue of any order or judgment under ORS 34.330, the cause of the imprisonment, and that the claim has not been adjudicated upon a prior writ of habeas corpus. Also, if the original imprisonment is by virtue of any order or process, a copy thereof shall be annexed to the petition or an explanation must be made as to why a copy is not available. In *Bedell v. Schiedler*, 307 Or 562, 566, 770 P2d 909 (1989), the court said, "[a] petition must state more than mere conclusions; it must allege with particularity facts which, if true, would entitle the plaintiff to habeas corpus relief." Here, plaintiff specifically alleges that the Board refused to release him on parole and that Starr's report does

not indicate that plaintiff has a psychological condition of a severe emotional disturbance at the time of the parole hearing, as well as alleging the other facts required by ORS 34.360. Plaintiff was entitled to release on May 29, 1997.

Reversed and remanded with instructions to direct petitioner's release on parole.