Argued and submitted April 10, affirmed October 4, 2000

## ASSOCIATED BUILDERS AND CONTRACTORS, INC.,
### *Appellant,*

*v.*

## TRI-COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON (TRI-MET) BOARD OF DIRECTORS,
acting in its capacity as
the Tri-Met Contract Review Board;
and Bechtel Infrastructure Corporation,
### *Respondents.*

### (9810-07174; CA A105142)

12 P3d 62

John A. DiLorenzo, Jr., argued the cause for appellant. With him on the briefs were Michael E. Farnell and Hagen, Dye, Hirschy & DiLorenzo.

Richard E. Alexander argued the cause for respondent Tri-Met. With him on the briefs were Charles F. Adams, Justin R. Boose and Stoel Rives.

Thomas A. Balmer argued the cause for respondent Bechtel Infrastructure Corporation. With him on the brief was Ater Wynne.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

The Board of Directors of the Tri-County Metropolitan Transportation District[1] issued a decision exempting, from competitive bidding, the contract to construct a light-rail extension to Portland International Airport. Petitioner, a trade association for nonunion contractors, appeals from the trial court's judgment upholding the Board's decision. We affirm.

In February 1997, Bechtel Infrastructure Corporation proposed that Tri-Met, the Port of Portland, the City of Portland, Metro, and Bechtel form a partnership to construct an extension of Tri-Met's existing east-side light-rail system to the Portland International Airport. Bechtel agreed to take responsibility for the design and construction and also to provide significant project funding. In return, Bechtel would receive $125 million and development rights along one segment of the light-rail line.

In August 1998, Bechtel told Tri-Met that, if it got the contract, it intended to abide by the Heavy and Highway National Agreement (national agreement) between a contractors association, of which Bechtel is a member, and the AFL-CIO.[2] The national agreement requires, in part, that all Bechtel's subcontractors sign either the national agreement or an appropriate local collective bargaining agreement.

Ordinarily, public contracts must be awarded on the basis of competitive bids, which would mean that the contract to construct the light-rail extension would be awarded

---

[1] The public contracting statutes distinguish between the public contracting agency, which enters into the contract and may propose exempting a contract from competitive bidding, and the local contract review board, which reviews the public contracting agency's proposed exemption. *See* ORS 279.011(7) and ORS 279.015(2). In this case, the Tri-County Metropolitan Transportation District is the public contracting agency and its Board of Directors is the local contract review board. We refer to them respectively as Tri-Met and the Board.

[2] Petitioners refer to the national agreement as a project labor agreement. Bechtel responds that the agreement is not a project labor agreement because the agreement is not specific to the light-rail expansion project and because it allows subcontractors to use existing local labor agreements instead of the national agreement. We need not determine whether the agreement is a project labor agreement to resolve this case.

that way. ORS 279.015(1) (1997).[3] ORS 279.015(2), however, authorizes public contracting agencies, such as Tri-Met, to exempt contracts from competitive bidding if local contract review boards, such as the Board, make findings that certain conditions have been met. In this case, Tri-Met evaluated whether the proposed contract with Bechtel met the standard set out in ORS 279.015(2) for an exemption. Tri-Met concluded that it did, prepared a draft of its findings, and submitted them to the Board.

The Board held public hearings on August 19, 1998, and again on August 26, 1998. At the hearings, petitioner submitted evidence that, if Bechtel performed the contract under the national agreement, nonunion subcontractors would be effectively prevented from competing for work on the project. Tri-Met responded that it is not its policy to dictate the terms of the labor relationship between a general contractor, such as Bechtel, and its subcontractors. It also explained that it had taken the same position on an earlier light-rail project. On that project, Tri-Met had refused to require the general contractor to use a project labor agreement, which would have required the general contractor to use union subcontractors. On this project, Tri-Met declined to prohibit the general contractor from abiding by the national agreement, which requires that subcontractors sign either a national or a local labor agreement.

Following the hearings, the Board adopted a resolution exempting the contract with Bechtel from competitive bidding requirements and approving Tri-Met's findings supporting that decision. Tri-Met's findings address both the specific statutory requirements set out in ORS 279.015(2) and a list of subsidiary factors. Petitioner filed a timely petition for a writ of review challenging Tri-Met's decision. *See* ORS 279.019(3).[4] Tri-Met moved to dismiss the petition for failure to state a claim or, in the alternative, for summary judgment. Tri-Met argued that petitioner lacked standing,

[3] ORS 279.015 was amended in 1999. Or Laws 1999, ch 59, § 72. Those amendments became effective October 23, 1999, Or Laws 1999, ch 59, § 257, and do not apply to this case.

[4] ORS 279.019(3) authorizes "any person" to bring an action "pursuant to ORS chapter 34" to challenge a local contract review board's decision.

that Tri-Met and the Board had followed ORS 279.015 in exempting the contract with Bechtel, and that the Board's findings were supported by substantial evidence. Bechtel intervened and also moved to dismiss the petition. Petitioner filed a cross-motion for summary judgment.

The trial court ruled that petitioner had standing under ORS 279.019(3) to challenge the Board's decision. On the merits, it ruled that Tri-Met's findings were supported by substantial evidence and were sufficient to meet the requirements of ORS 279.015. The trial court accordingly granted Tri-Met and Bechtel's motions, denied petitioner's cross-motion for summary judgment, and entered judgment in Tri-Met and Bechtel's favor.

■ On appeal, petitioner challenges the trial court's rulings on the merits while Tri-Met and Bechtel cross-assign error to its ruling that petitioner has standing.[5] Because standing is a potentially dispositive issue, we begin with it. Petitioner relies on ORS 279.019(3) to establish that it has standing to challenge the Board's decision. *See Local No. 290 v. Dept. of Environ. Quality*, 323 Or 559, 566, 919 P2d 1168 (1996) ("standing is not a matter of common law but is,

---

[5] The issue of mootness was raised at oral argument. ORS 279.321 provides that:

"(1) If a court determines that a public improvement contract is void because the public agency letting the contract failed to comply with any statutory or regulatory competitive bidding or other procurement requirements, and the contractor entered into the contract without intentionally violating the laws regulating public improvement contracts, then, unless the court determines that substantial injustice would result, the contractor is entitled to reimbursement for work performed under the contract as follows:

"(a) If the work under the public improvement contract is substantially complete, the public agency shall ratify the contract.

"(b) If the work under the public improvement contract is not substantially complete, then the public agency shall ratify the contract and the contract shall be deemed terminated."

Petitioner has not claimed that Bechtel intentionally violated the laws regulating public improvement contracts. There is also no evidence that the work on the project is substantially complete. Accordingly, if petitioner prevails, the contract would be terminated and Tri-Met would need to award a new contract for the remainder of the work. *See* ORS 279.321(1)(b). Conversely, if Tri-Met and Bechtel prevail, there will be no need to award a new contract to complete the project. Because our decision will have a practical effect on the parties, the case is not moot. *See Hamel v. Johnson*, 330 Or 180, 184, 998 P2d 661 (2000).

instead, conferred by the legislature"). ORS 279.019(3) provides:

> "Any person except the public contracting agency or anyone representing it may bring an action for writ of review pursuant to ORS chapter 34 to test the validity of any exemption granted pursuant to ORS 279.015 * * * by a board."

Focusing on the phrase "any person," petitioner argues that the phrase eliminates the need to prove any injury before bringing a challenge under ORS 279.019(3). Tri-Met and Bechtel respond that, under ORS 279.019(3), a petition for a writ of review must be brought "pursuant to ORS chapter 34." Because ORS chapter 34 limits writs of review to "cases in which a substantial interest of a plaintiff has been injured * * *," ORS 34.040(1), they conclude that only those persons whose substantial interests have been injured may bring an action under ORS 279.019(3).

Neither side's interpretation fits comfortably with the text.[6] Tri-Met and Bechtel's interpretation would require us to omit the phrase "any person" in ORS 279.019(3). If only those persons who have suffered an injury to a substantial interest have standing to bring an action for a writ for review under ORS 279.019(3), the portion of that statute that provides that "any person" may bring an action for a writ of review would be meaningless. Conversely, allowing "any person" to bring an action for a writ of review under ORS 279.019(3), limits, at least partially, the effect of the phrase "pursuant to ORS chapter 34." Under petitioner's interpretation, ORS 279.019(3) would say that a writ of review may

---

[6] Tri-Met argues that *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 601 P2d 769 (1979), resolves the standing issue. In that case, the petitioner challenged a county's decision under a statute that allowed review of county decisions by writ of review. *Id.* at 597 (quoting *former* ORS 203.200). The court concluded that a petitioner must have standing under ORS 34.040 to challenge a county decision under *former* ORS 203.200. *Id.* at 611. Unlike ORS 279.015(3), the statute at issue in *Strawberry Hill 4 Wheelers* did not state that "any person" could challenge a county decision by writ of review. *See former* ORS 203.200. *Former* ORS 203.200 thus omitted the text that is critical to petitioner's argument.

be brought pursuant to ORS chapter 34, *except* for the standing requirements of ORS 34.040(1). Although both interpretations would read language into or out of the statute, petitioner's interpretation does less violence to the text. Under petitioner's interpretation, the phrase "pursuant to ORS chapter 34" would still have some meaning even if it were not given its full effect.[7]

■  The context of ORS 279.019(3) cuts against Tri-Met and Bechtel's interpretation. ORS 279.019(1) authorizes a petition to review orders that the director of the Oregon Department of Administrative Services issues exempting specific contracts from competitive bidding. It provides that the director's orders "shall be reviewable pursuant to ORS 183.484[.]" Both ORS 183.484 and ORS chapter 34 impose limits on the persons who may challenge agency action.[8] ORS 279.019(1), however, does not provide that "any person" may petition for review of the director's order "pursuant to ORS 183.484," while subsection (3) adds that phrase. We presume that the use of the phrase "any person" in subsection (3) was purposeful and that we should strive to give it some meaning. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

Although the text and context support petitioner's interpretation, we cannot say that ORS 279.019(3) is unambiguous. We turn to its legislative history. Subsection (3) was added to ORS 279.019 in 1983. *See* Or Laws 1983, ch 690, § 5. As originally proposed, the bill would have allowed "any person" to challenge local board action by bringing a declaratory judgment action pursuant to ORS chapter 28. The legislature changed the procedure to a writ of review pursuant to ORS chapter 34 to provide for deferential review of agency orders. Tape recording, House Intergovernmental Affairs Committee, SB 190, June 29, 1983, Tape 167, Side B (Statement of Jim Coleman).

---

[7] The other procedures that ORS chapter 34 provides would still potentially apply to challenges brought under ORS 279.019(3) even if the standing requirements of that chapter were inapplicable.

[8] Under ORS 183.484, only a person who has been adversely affected or aggrieved may petition for review of an agency's order. *See* ORS 183.484(3); *Local No. 290*, 323 Or at 567.

Jim Coleman, the City Attorney for Lake Oswego, told the House Committee considering the amendment:

> "[The bill] provides for the method of review of the actions of local boards. It provides that the method of review is a declaratory judgment pursuant to chapter 28. I would like to suggest the most appropriate method of review would be the writ of review pursuant to chapter 34 and I believe that then [sic] would make the method of review similar to the method of review of the state agency decisions. The state agency actions are reviewed under the APA and the action is filed directly with the Court of Appeals with a statutory prescribed, fairly limited, scope of review. In other words, the Court of Appeals will look at the decision that the state agency made, determine whether the law was correctly applied, and whether there was substantial evidence in the record to support that decision. The writ of review would provide the same substantial evidence in the record to support that decision. The writ of review would provide the same scope of review for the local agency's decision as opposed to the way [it is] written. A declaratory judgment would provide for a trial, essentially a factual trial, on the merits of the decision. The court would then have in front of them information perhaps that the local body did not have when [it] made [its] decision and it creates, essentially, a situation where you are allowing the court to substitute its judgment, based on new and different information from that in front of the local body. I feel that the court should review based on the same information [that is] available to the body at the time [it] made [its] decision."

*Id.* After considering Coleman's testimony, the committee changed the method of review from a declaratory judgment action to a writ of review pursuant to ORS chapter 34. The legislative history does not suggest that, by adding the reference to ORS chapter 34, the legislature intended to limit the phrase "any person" and incorporate the standing requirements of ORS chapter 34. Rather, the stated purpose of that change was to provide the same deferential standard of review on the record created before the agency that applies to petitions for a writ of review. Because petitioner is a "person," *see* ORS 65.001(28), it has standing under ORS 279.019(3) to challenge the exemption the Board approved in this case.

Before turning to petitioner's arguments on the merits, we describe the applicable statutes briefly. As noted

above, as a general rule, all public contracts must be based on competitive bids. *See* ORS 279.015(1). A local contract review board, however, may exempt public contracts from competitive bidding requirements. *See* ORS 279.015(2), ORS 279.015(6)(b). To exempt a contract from the competitive bidding requirements, the public agency seeking the exemption must find:

> "(a)   It is unlikely that such exemption will encourage favoritism in the awarding of public contracts or substantially diminish competition for public contracts; and

> "(b)   The awarding of public contracts pursuant to the exemption will result in substantial cost savings to the public contracting agency. In making such finding, the director or board may consider the type, cost, amount of the contract, number of persons available to bid and such other factors as may be deemed appropriate."

ORS 279.015(6).

Two other statutory provisions are relevant. First, the decision to exempt a public contract from competitive bidding is subject to approval by the local contract review board. ORS 279.015(6)(b) directs the local contract review board to "[r]equire and approve or disapprove written findings" submitted by the public contracting agency to show compliance with the requirements of ORS 279.015(2)(a) and (b). Second, ORS 279.015(6)(a) authorizes local contract review boards, "[w]here appropriate," to direct the "use of alternate contracting and purchasing practices that take account of market realities and modern or innovative contracting and purchasing methods" when they approve an exemption from the competitive bidding requirements.[9]

Petitioner makes essentially three arguments on appeal. First, it argues that the fact that an agency may exempt a contract from competitive bidding does not excuse

---

[9] ORS 279.015(2) expressly makes the decision to exempt a public contract from competitive bidding subject to ORS 279.015(6)(b). Neither ORS 279.015(2) nor ORS 279.015(6)(b), however, makes the decision to exempt a public contract from competitive bidding subject to ORS 279.015(6)(a). Rather, ORS 279.015(6)(a) applies only "[w]here appropriate."

the agency from going through some other form of competitive procurement. Second, petitioner argues that, even if Tri-Met could exempt the decision to let the general contract from all competitive requirements, it could do so only if it considered the effect that the exemption would have on the subcontractors who want to work on the light-rail extension project. Finally, petitioner argues that the findings the Board approved are insufficient and, in any event, are not supported by substantial evidence.

■     Petitioner's first argument runs as follows: ORS 279.015(2)(a) permits an agency to exempt a contract from competitive bidding if it finds that it is "unlikely that such exemption will encourage favoritism in the awarding of public contracts or substantially diminish competition for public contracts[.]" Petitioner reasons that exempting a public contract from competition necessarily encourages favoritism in the award of *that* contract and also substantially reduces competition for *that* contract. In petitioner's view, the statute creates a dilemma: A contracting agency cannot both exempt a public contract from all competitive requirements and find, as the statute requires, that doing so will not reduce competition for that contract. Petitioner resolves that dilemma by reasoning that the authority to exempt a contract from competitive bidding does not mean that an agency need not employ other forms of competitive procurement; rather, a public agency may exempt a contract from competitive bidding only if it employs an "alternative contracting method." Relying on model rules promulgated after the Board's decision in this case,[10] petitioner asserts that, when an alternative contracting method is used, there must still be some competitive procurement process unless another statute or rule provides otherwise.[11]

---

[10] Petitioner relies on the Attorney General's rules in OAR chapter 137, division 40. Those rules were modified in 1998 and did not become effective until October 1998, after Tri-Met decided to exempt the contract with Bechtel. Also, those rules are not binding on Tri-Met both because it has not adopted them and because it has promulgated its own rules. *See* OAR 137-030-0000(2) (1998) (stating that the Attorney General's rules are binding only on agencies that adopt them).

[11] Tri-Met and Bechtel argue that petitioner did not make this argument below. Petitioner, however, raised the issue of whether the Board misconstrued ORS 279.015. *See Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or 487, 500-01, 982 P2d 1117 (1999); *Stull v. Hoke*, 326 Or 72, 76, 948 P2d 722 (1997). Reaching the merits of petitioner's arguments results in no unfairness to Tri-Met

Petitioner's argument assumes that an agency cannot both exempt a contract and make the findings that the statute requires with respect to that contract. The Board's findings in this case demonstrate the difficulty with that assumption. The Board found that, because of the unique terms of the contract, "Bechtel is necessarily a sole source entity for this contract." It also found that "Bechtel [was] the only party to come forward to initiate a feasible concept for an Airport Line Extension project, although the Port's and Tri-Met's interest in bringing light rail to [Portland International Airport] [was] widely known." In other words, by choosing Bechtel as the contractor for the light-rail project, Tri-Met did not favor Bechtel over any other contractor; rather, exempting this contract from competitive bidding did not encourage favoritism in the awarding of, or substantially reduce competition for, this public contract because the Board's findings make clear that no one else could have done the job. *See* ORS 279.015(2)(a).

Not only is the assumption on which petitioner's argument rests misplaced, but the conclusion petitioner reaches is at odds with the remainder of the statute. Petitioner concludes that the only sensible way to read ORS 279.015(2) is to recognize that it exempts contracts from complying with competitive bidding requirements but not alternative contracting methods. ORS 279.015(6)(a), however, provides that a local contract review board shall, "[w]here appropriate, direct the use of alternate contracting and purchasing practices * * *." ORS 279.015(6)(a). Contrary to petitioner's argument, ORS 279.015(6)(a) does not require the use of alternative contracting practices whenever a local contract review board exempts a contract from competitive bidding. It only requires that it do so "[w]here appropriate." Consistently, ORS 279.015(2) imposes only one absolute requirement on a local contract review board's decision to exempt public contracts from competitive bidding. It makes that decision "[s]ubject to subsection 6(b)," which requires that the local contract review board "approve or disapprove

and Bechtel; neither Tri-Met nor Bechtel has explained how it would have presented its case differently had petitioner made this argument below. *See Northwest Natural Gas Co.*, 328 Or at 501.

written findings by the public contracting agency that support the awarding of a particular public contract or a class of public contracts, without the competitive bidding requirements * * *." ORS 279.015(6)(b). Petitioner's first argument provides no reason to disturb the trial court's judgment.

■ Petitioner advances a second argument. It argues that, in evaluating the effect of an exemption on "favoritism in the awarding of public contracts" and on "competition for public contracts," the Board should have considered the effect that Bechtel's participation in the national agreement would have on nonunion subcontractors. More specifically, petitioner argues that the Board should have considered that Bechtel's participation in the national agreement would effectively preclude nonunion subcontractors from competing for work on the light-rail extension project and thus reduce competition among all subcontractors. In order to prevail on that argument, petitioner must establish that the term "public contracts," used in ORS 279.015(2), includes the contracts that the general contractor enters into with subcontractors.

On that point, petitioner notes that the phrase, "public contract" is defined as "any purchase, lease or sale by a public agency of personal property, public improvements or services other than agreements which are for personal service." ORS 279.011(6). Petitioner reasons that because Bechtel pays its subcontractors out of the funds that it receives from Tri-Met, *see* ORS 279.445(4)(a) (1997), Tri-Met is purchasing services from the subcontractors and thus those contracts are "public contracts" within the meaning of ORS 279.011(6).

■ Petitioner's argument is at odds with the definition of "public contract." *See* ORS 279.011(6). The terms of that definition imply that, in order for the contract to be a "public contract," a public agency must be a party to the contract for the "purchase, lease or sale" of the services. Under the plain language of the definition, the fact that the public agency supplies funds to general contractors, who use them to pay subcontractors, is not sufficient to convert subcontracts between private parties into public contracts. The context leads to the same conclusion. Public contracting agencies are responsible for making payments on public contracts. *See*

ORS 279.435. If subcontracts were "public contracts," as petitioner argues, the public contracting agency, not the general contractor, would be responsible for paying the subcontractors directly. As petitioner points out, however, ORS 279.445(4)(a) makes general contractors responsible for paying subcontractors. Similarly, only public agencies can award "public contracts." *See* ORS 279.029(1). On the other hand, private contractors are generally responsible for awarding subcontracts. *See* ORS 279.111(1) (stating that contractors shall not discriminate in the awarding of subcontracts). Neither the text nor the context of the public contracting statutes supports petitioner's second argument.

When the legislature intended public contracting agencies to regulate the relationship between contractors and subcontractors, it said so expressly. *See* ORS 279.445 (1997) (regulating relations between contractors and subcontractors); ORS 279.059 (allowing public contracting agency to require a contractor to subcontract part of its contract to an emerging small business); ORS 279.106 (same). It has not done so here, and we decline to read into ORS 279.015(2) a requirement that the public contracting agency consider the possible effect on subcontractors in deciding whether to exempt a general contract from competitive bidding requirements. Because the premise of petitioner's argument fails, the Board did not need to consider the effect that awarding the contract to Bechtel would have on competition among subcontractors for work on the light-rail project.

■    Next, petitioner argues that the findings made by Tri-Met are insufficient in form. In support of its argument, petitioner points to the following findings:

> "The terms and conditions of the design/build contract will be the result of arms-length contract negotiations between Tri-Met and Bechtel, and will be reviewed and approved by the Tri-Met Board, thus discouraging any favoritism in the awarding of the contract.

> "Under the unique circumstances presented, it is unlikely that an exemption authorizing Tri-Met to negotiate a

design/build contract with Bechtel for the Airport Max Project will encourage favoritism in the awarding of public contracts or substantially diminish competition for public contracts."

In its view, these findings are insufficient in form because they "simply restate the legal standard in the affirmative." If those were the only findings that Tri-Met made, the issue might be closer. *See Sunnyside Neighborhood v. Clackamas Co. Comm.*, 280 Or 3, 21, 569 P2d 1063 (1977) (conclusions are not sufficient findings); *accord Hill v. Union County Court*, 42 Or App 883, 887, 601 P2d 905 (1979). In addition to those general findings, however, Tri-Met also made the specific findings listed in ORS 279.011(5) (listing subsidiary factors to be considered in making findings).

■ Tri-Met found, with regard to operational, budget, and financial data, *see* ORS 279.011(5)(a), that "Bechtel [was] the only party to come forward to initiate a feasible concept for an Airport Line Extension project, although the Port's and Tri-Met's interest in bringing light rail to [Portland International Airport] [was] widely known." Also, with regard to market conditions, *see* ORS 279.011(5)(f), Tri-Met found:

"This negotiated contract will have no negative impact on the contracting or subcontracting market in the Portland area. A sufficient number of qualified firms are available to ensure adequate competition and any subcontracted work will be competitively bid. This is a unique opportunity to enhance the local economy because it is unlikely the Project would be built in the near future without this public-private cooperation.

"As a single contract exemption, market conditions will not be directly affected, however, positive indirect market impact will occur by creation of jobs and investment/development opportunities generated as a result of the contract, both as to rail construction and future [Portland International Center] development. Although the contract with Bechtel will be awarded without direct competition, a substantial part of the construction work will be performed by subcontractors who will be selected through a competitive process. Because of the magnitude of the private investment required and private economic risks associated with the project, the project is unique and it is highly unlikely

that this procurement will have any effect on or substantially diminish competition for future public contracts."

Although conclusions alone are not sufficient, " '[n]o particular form is required, and no magic words need to be employed.' " *Hill*, 42 Or App at 887 (quoting *Sunnyside Neighborhood*, 280 Or at 21). All that is required is that the findings "show that the exemption of a contract or class of contracts complies with the requirements of subsection (2)(a) and (b) * * *." *See* ORS 279.015(6)(b). Tri-Met's findings satisfy that requirement.

■■ Finally, petitioner argues that Tri-Met's findings are not supported by substantial evidence.[12] Under ORS 279.015(2), Tri-Met is required to make two separate findings before it may grant an exemption from the competitive bidding requirements. First, it must find that "[i]t is unlikely that such exemption will encourage favoritism in the awarding of public contracts or substantially diminish competition for public contracts[.]" ORS 279.015(2)(a). Second, Tri-Met must find that "[t]he awarding of public contracts pursuant to the exemption will result in substantial cost savings to the public contracting agency." ORS 279.015(2)(b). In a writ of review proceeding, substantial evidence in the record exists to support a finding when the record, viewed as a whole, would permit a reasonable person to make that finding. *Johnson v. Civil Service Board*, 161 Or App 489, 500, 985 P2d 854, *on recons* 162 Or App 527, 986 P2d 666 (1999).

Tri-Met found that "[u]nder the unique circumstances presented," it is unlikely that the exemption will encourage favoritism in the awarding of public contracts or substantially diminish competition for public contracts. It also found that those "unique circumstances" included findings that Bechtel was "the only party to come forward to initiate a feasible concept" for the extension of light rail to Portland International Airport, that Bechtel was investing in the project and was assuming some of the economic risks associated with the project, and that because of "the magnitude of

---

[12] Most of petitioner's substantial evidence arguments are based on its legal conclusion, with which we disagree, that Tri-Met was required to consider the effect that exempting the general contract with Bechtel would have on subcontractors' ability to work on the light-rail extension.

the private investment required and economic risks associated with the project, the project is unique and it is highly unlikely that this procurement will have any effect on or substantially diminish competition for future public contracts." Having reviewed the record as a whole, we conclude that substantial evidence supports the Board's findings.

Affirmed.