Argued and submitted March 6, appeal dismissed May 30, 2013

PEPE GLENN RIVAS,
*Plaintiff-Appellant,*

*v.*

Rob PERSSON,
Superintendent,
Oregon State Correctional Institution,
*Defendant-Respondent.*

Marion County Circuit Court
11C19664; A149716

304 P3d 765

Ryan T. O'Connor argued the cause and filed the reply brief for appellant. Pepe Glenn Rivas filed the opening brief *pro se.*

Jamie K. Contreras, Assistant Attorney-in-Charge, argued the cause for respondent. With her on the brief were Mary H. Williams, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

Plaintiff petitioned for a writ of habeas corpus, asserting that the Board of Parole and Post-Prison Supervision had failed to fully credit him for time served following his arrest. The trial court denied the petition under ORS 34.370(2)(b)(A) after concluding that plaintiff's remedy properly lies in post-conviction relief and, alternatively, that the petition was barred by issue preclusion. Plaintiff appeals, challenging both of the grounds on which the trial court denied his petition. We conclude that plaintiff's appeal is moot because the board has since granted the only relief to which plaintiff would be entitled if he were to prevail—commencement of the release-consideration process. Accordingly, we dismiss the appeal.

We review the denial of a habeas corpus petition under ORS 34.370(2)(b)(A) as we review dismissals under ORCP 21 A(8) for failure to state a claim. *Billings v. Gates*, 133 Or App 236, 240-41, 890 P2d 995 (1995), *aff'd*, 323 Or 167, 916 P2d 291 (1996). That is, we review the allegations in the petition and related inferences in the light most favorable to plaintiff to determine whether the petition alleges a legally sufficient claim. In this case, plaintiff attached 12 exhibits to his petition, stating that the exhibits were "submit[ted] in support" of the petition, but not expressly incorporating them in the petition. In the judgment dismissing plaintiff's petition, the trial court noted that it could consider the petition "in its entirety, including any attachments and exhibits in deciding whether to issue a writ." Neither party challenges the court's consideration of the exhibits. Accordingly, we assume, without deciding, that it is appropriate to consider the exhibits on appeal as well, and we take the following facts from the petition and the exhibits.

Plaintiff has been incarcerated since 1987, when he was arrested and charged with two counts of aggravated murder and one count of first-degree robbery. Plaintiff entered into a plea agreement in 1992 under which he agreed to plead guilty to one count of aggravated murder. In return, the state agreed to dismiss the other two charges and promised that plaintiff's sentence would be imposed concurrently with the sentences he was then serving for

two other convictions and that he would receive "[c]redit for all time served in custody." The court accepted plaintiff's guilty plea and sentenced him to life in prison without the possibility of parole for a minimum of 30 years, ordering that the sentence be served concurrently with the others that plaintiff was then serving. One thousand five hundred sixty-eight days had passed between plaintiff's arrest and his sentencing.

Sometime in or before 2006, the Department of Corrections (DOC) determined that plaintiff was entitled to 964 days of credit for time served.[1] Plaintiff brought a mandamus action against DOC in 2006 in an unsuccessful attempt to compel DOC to award additional credit. The court in that case ruled that DOC did not have a legal duty under ORS 137.320 and ORS 137.370 to credit plaintiff with the additional time served.[2]

In July 2010, the board found that plaintiff was likely to be rehabilitated within a reasonable period of time, and it converted his sentence to life with the possibility of parole. Applying the sentencing matrix that was in effect when plaintiff committed the underlying crime, the board determined in July 2011 that plaintiff's prison term should be 276 months. Based on that determination, it set a projected parole release date of June 3, 2012.[3] In setting that date, the

---

[1] Although the record is not entirely clear on this point, it appears that the disparity between the credit for time served actually granted and the credit to which plaintiff claims he was entitled may arise from a disagreement regarding whether plaintiff is entitled to credit for time that he spent in jail on charges other than the aggravated murder count to which he pleaded guilty.

[2] ORS 137.320(1) provides that, when a criminal defendant is committed to DOC's custody, the sheriff shall deliver the defendant together with a statement of the number of days the defendant was imprisoned prior to delivery and, if applicable, the number of days the defendant has remaining on any previously imposed term of incarceration. ORS 137.320(3) requires DOC, upon receipt of that information, to "establish a case file and compute the defendant's sentence in accordance with the provisions of ORS 137.370."

ORS 137.370(2)(a), in turn, provides that, for purposes of computing the amount of a sentence served, the term of confinement includes the time that the defendant is confined "after the arrest for the crime for which sentence is imposed[.]" ORS 137.370(4), however, provides that a person who was confined for a crime unrelated to the current crime of conviction "shall not receive presentence incarceration credit for the time served in jail towards service of the term of confinement."

[3] After the board found in 2010 that plaintiff is likely to be rehabilitated, it initially set a projected release date of June 3, 2019, based on the 30-year minimum

board factored in 964 days of credit for time served. Had the board credited plaintiff with all 1,568 days that plaintiff was incarcerated between his arrest and his sentencing, the projected release date would have been approximately October 8, 2010.

Plaintiff brought the present action in August 2011, seeking specific performance of the plea agreement. The trial court issued an order to defendant to show cause why the writ should not be allowed. Defendant responded with a motion to deny the petition for failure to state a claim for relief, arguing that the decision in the mandamus action was preclusive and, alternatively, that habeas corpus relief was not available because plaintiff had a remedy in post-conviction relief. The trial court granted the motion "[f]or the reasons set forth in defendant's response" and entered a judgment dismissing plaintiff's petition.

On appeal, plaintiff argues that this action is not barred by issue preclusion and that a writ of habeas corpus is the appropriate remedy. As to the first point, he contends that issue preclusion does not apply because the issues in the two proceedings are not identical and the issues presented in this case were neither actually litigated nor essential to the final decision on the merits of the mandamus action. Plaintiff asserts that the issues in this case are (1) whether the plea agreement entitled him to credit for all time served in custody and (2) whether he is entitled to release if he prevails on the first issue. In the mandamus action, plaintiff continues, the issue was whether DOC had a legal duty under ORS 137.320 or ORS 137.370 to credit him with the additional time served before sentencing. With respect to post-conviction relief, plaintiff contends that he is not challenging the lawfulness of the judgment of conviction and, therefore, that post-conviction relief is not available to him.

In response, defendant first contends that plaintiff's appeal is moot. Defendant moved to dismiss on mootness grounds while this appeal was still in the briefing stage,

sentence. Later that year, the Supreme Court held in *Janowski/Fleming v. Board of Parole*, 349 Or 432, 245 P3d 1270 (2010), that the 30-year minimum no longer applies after the board has converted a sentence to life with the possibility of parole. The board later revisited plaintiff's case and, in July 2011, moved up his projected release date by seven years, setting it for June 3, 2012.

citing OAR 255-070-0015[4] and asserting that, even if plaintiff is correct as to the calculation of his credit for time served, "the most he would have been entitled to in October 2010 was an exit interview." Defendant submitted a copy of a board order issued on December 20, 2011, in which the board stated that it had held an exit interview on that date, in anticipation of plaintiff's upcoming June 3, 2012, projected release date. According to the order, the board reviewed information including psychological evaluations of plaintiff conducted in October and November 2011 and, based on that evidence, found that plaintiff "suffers from a present severe emotional disturbance that constitutes a danger to the health or safety of the community." In light of that finding, the board postponed plaintiff's projected release date by two years, to June 3, 2014. Defendant argued that, given plaintiff's new projected release date, he is not entitled to immediate release on parole even if he prevails in this appeal. The Appellate Commissioner denied the motion, ruling that, if plaintiff prevails on appeal, his release date will be 604 days sooner than it otherwise would be, so a ruling in plaintiff's favor would have a practical effect on his rights even if his release date is extended for two years.

Defendant now renews the contention that the appeal is moot, arguing that, because the board's decision to postpone plaintiff's projected release date was based on the finding that he suffers from a present severe emotional disturbance, his release date does not "relate back" to when plaintiff asserts the board *should have* held his hearing.

Plaintiff responds that the appeal is not moot, albeit for a different reason than cited by the Appellate Commissioner. Plaintiff asserts that the board has authority to postpone a projected release date only if it holds an exit interview under ORS 144.125 before the projected release date passes and defers release for one of the reasons provided in that statute. Citing *Hamel v. Johnson,* 330 Or 180, 998 P2d 661 (2000), plaintiff argues that it is irrelevant that the board held an exit interview and decided to postpone his

---

[4] OAR 255-070-0015 provides, in part, that the board "may order an exit interview prior to the inmate's release date to review the inmate's case and set or approve conditions."

release after the date on which he alleges he was entitled to be released.

With respect, we disagree with both plaintiff's and the Appellate Commissioner's reasoning, and we conclude that the appeal is moot. Two cases inform our analysis. The first is *Hamel*, on which plaintiff relies. In that case, the plaintiff was initially assigned a release date in May 1997. *Id.* at 182. In January 1997, the board extended his release date to May 1999, after concluding that he suffered from a present severe emotional disturbance, based on a psychologist's report. *Hamel v. Johnson*, 169 Or App 216, 218-19, 9 P3d 719 (2000). The plaintiff brought a habeas action in May 1997 asserting that he was entitled to be released because the psychologist's report did not support the conclusion that he suffered from a present severe emotional disturbance. The trial court dismissed the habeas action, and the plaintiff appealed. While the appeal was pending in this court, the board again extended the plaintiff's release date, this time to May 2001, based on a psychological evaluation. *Id.* We dismissed the pending appeal as moot. *Hamel v. Johnson*, 158 Or App 276, 281, 974 P2d 260 (1999). We reasoned that, if the initial order extending the release date was unlawful, the plaintiff would be entitled at most only to reconsideration for release on parole, which, we said, had already occurred with the second extension order. *Id.*

The Supreme Court reversed our decision, holding that the board was required to release the plaintiff in May 1997—on the originally assigned release date—unless there was a valid reason for postponing his release. 330 Or at 187. If the board did not have a valid reason to postpone the original release date, the court concluded, the plaintiff should have been released in 1997 and the board could not have issued the second order. *Id.* at 188. Accordingly, the court remanded for us to determine whether the 1997 postponement was valid. *Id.*

The second case that informs our analysis is *Janowski/Fleming v. Board of Parole*, 349 Or 432, 245 P3d 1270 (2010). In that consolidated case, two inmates sought judicial review of board orders setting their respective release dates. The circumstances and the court's analysis

concerning one of the inmates, Janowski, are pertinent here. Janowski was sentenced in 1985 to life in prison with a 30-year mandatory minimum. *Id.* at 436. After he had been incarcerated for 20 years, the board found that he was likely to be rehabilitated within a reasonable time, and it converted his sentence to life imprisonment with the possibility of parole. *Id.* at 437-38. However, it set a release date in May 2015, the conclusion of the 30-year mandatory minimum sentence.

On judicial review, the Supreme Court held that, once the board has converted a sentence to life with the possibility of parole, it has the authority to consider releasing a prisoner after 20 years, so the May 2015 release date that the board had set was invalid. *Id.* at 446. The court went on to conclude that, to determine Janowski's projected parole release date, the board should apply the parole matrix in effect when Janowski committed his crimes. *Id.* at 455-56.

The court then turned to the disposition of the case. The applicable matrix range had already expired, so Janowski argued that he was entitled to immediate release because, he contended, any decision to postpone release must be made at an exit interview that must occur, if at all, before the expiration of the matrix range. *Id.* at 456, 459. The court disagreed, observing that, under ORS 144.125(1) (1985), the exit interview to which Janowski referred is to take place "prior to the *scheduled* release" of the prisoner, and that the board had not yet scheduled a valid release date. *Id.* at 459 (emphasis partially omitted). The court anticipated that the board would conduct a hearing "in the immediate future" to set Janowski's release date, *id.*, and that, because the matrix range had already expired, the release date would "be set in the near future," *id.* at 456. Once the board had done so, the court noted, it would have an opportunity to conduct an exit interview to determine whether there were any grounds for postponing his release. *Id.* at 459.

In our view, this case is governed by *Janowski/ Fleming* rather than *Hamel. Hamel* stands for the proposition that, if a release date was scheduled and elapsed without the board first having found a valid reason to postpone release, but the inmate was erroneously not released, later

events cannot furnish a basis for postponing release; the inmate is entitled to immediate release. That is because an inmate *must* be released from prison on his or her scheduled release date absent valid state action to postpone that release. *Janowski/Fleming*, on the other hand, stands for the proposition that the inmate is *not* entitled to immediate release if a release date has not been set, even if it should have been set for a date that has already passed. In other words, if a court concludes that the board erred by setting an initial projected release date too far in the future, and the date that it should have set has already passed, the inmate does not receive a windfall in the form of release without the board first having the opportunity to determine whether there are reasons to postpone release. The most a court can order by way of relief is commencement of the release-consideration process—that is, a hearing in the immediate future to determine the release date.

Moreover, nothing in *Janowski/Fleming* suggests that the limitation on the relief available—prompt commencement of the release-consideration process, including setting of a projected release date and its associated exit interview—depends on the nature of the error that led to the erroneous delay in setting the release date. In *Janowski/ Fleming*, the error was the board's failure to set a projected release date according to the applicable parole matrix once the board determined that Janowski was likely to be rehabilitated within a reasonable time. Here, the claimed error is the state's alleged failure to grant plaintiff complete credit for time served. In both cases, though, the end result is the same: the plaintiff is entitled to have an *initial* parole release date set so that the board may "determine whether any of the grounds for postponement of * * * release are present." *Janowski/Fleming*, 349 Or at 459; *see* OAR 255-25-015 (May 31, 1985) (credit for time served adjusts the inmate's commitment date, which the board uses to calculate the initial projected release date).[5] Put simply, once the matrix release date has passed, credit for time served no

_____

[5] OAR 255-25-015 (May 31, 1985) provides:

"(1) In computing the prison release date, the Board shall establish the adjusted commitment date, the date which will be considered the starting date for the prison term, on the most recent sentence being considered.

longer has any bearing on when the inmate will be released. Instead, that ultimate release date is determined exclusively through the parole consideration process.

Application of those principles to this case shows that plaintiff could not obtain any meaningful relief even if he could prove, as he claims, that his initial parole release date should have been scheduled for October 2010. If plaintiff established that he was indeed entitled to the additional 604 days of credit for time served, he would, as in *Janowski/Fleming*, be entitled to have the release-consideration process commenced, starting with a hearing in the immediate future to establish his release date. After that hearing, the board would be permitted to conduct an exit interview to determine whether to postpone the release.

But both of those events have already occurred. The board held a hearing at which it established plaintiff's matrix release date as June 3, 2012. And the board then conducted an exit interview and determined that plaintiff has a present severe emotional disturbance that constitutes a danger to the health or safety of the community and justifies postponing his release for 24 months. Although we must presume, given our standard of review, that the board established the matrix date incorrectly, the salient fact is that, regardless of whether plaintiff's or the board's calculation of that date is correct, the date has passed, rendering credit for time served immaterial. Moreover, the release-consideration process has commenced. Consequently, ordering the board to start the process again would have no practical effect on plaintiff's rights. It follows that plaintiff's appeal is moot. *See Hamel*, 330 Or at 184 ("[I]f the court's decision 'no longer will have a practical effect on or concerning the rights of the parties,' then the matter will be dismissed as moot." (Citation omitted.)).

Appeal dismissed.

---

"(2) The adjusted commitment date shall be calculated by subtracting the number of days the person was in custody from the date the person was received by the Corrections Division.

"(3) Only those periods of time certified by the sheriff of the county where the person was confined shall be considered by the Board in establishing the adjusted commitment date."