Argued and submitted November 3, 2004, appeals dismissed as moot
August 11, 2005

CITY OF EUGENE,
a municipal corporation,
*Petitioner-Respondent,*

*v.*

State of Oregon,
PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent-Respondent,*

*and*

Karen JENKINS,
Diane Davidson, Arlyn Stepper,
Gary Gillespie, Ann Montague,
Judith Ann Sugnet, Gary Nauta, and Roger Garver,
*Intervenors-Appellants.*

(CC 99C-12794)

LANE COUNTY,
City of Eugene, Multnomah County,
City of Portland, City of Roseburg,
City of Huntington, and Canby Utility Board,
municipal corporations,
*Petitioners-Respondents,*

*v.*

STATE OF OREGON,
*Respondent-Respondent,*

*and*

State of Oregon,
by and through
PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent-Respondent,*

*and*

Karen JENKINS,
Diane Davidson, Arlyn Stepper,
Gary Gillespie, Ann Montague,
Judith Ann Sugnet, Gary Nauta, and Roger Garver,
*Intervenors-Appellants.*

(CC 99C-12838)

CITY OF EUGENE,
a municipal corporation,
by and through Eugene Water & Electric Board,
*Petitioner-Respondent,*

*v.*

State of Oregon,
PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent-Respondent,*

*and*

Karen JENKINS,
Diane Davidson, Arlyn Stepper,
Gary Gillespie, Ann Montague,
Judith Ann Sugnet, Gary Nauta, and Roger Garver,
*Intervenors-Appellants.*

(CC 99C-20235)

ROGUE RIVER VALLEY IRRIGATION DISTRICT,
a municipal corporation,
*Petitioner-Respondent,*

*v.*

State of Oregon,
PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent-Respondent.*

(CC 00C-16173)

(CA A121400; SC S50617)

117 P3d 1001

Gregory A. Hartman, of Bennett, Hartman, Morris & Kaplan, LLP, Portland, argued the cause for intervenors-appellants Karen Jenkins, Diane Davidson, Arlyn Stepper, Gary Gillespie, Ann Montague, Judith Ann Sugnet, Gary Nauta, and Roger Garver. With him on the briefs was Michael J. Morris.

William F. Gary, of Harrang Long Gary Rudnick P.C., Eugene, argued the cause for petitioners-respondents Lane County, City of Eugene, Multnomah County, City of Portland, City of Roseburg, City of Hunnington, Canby Utility Board, and Rogue River Valley Irrigation District. With him on the brief were Sharon A. Rudnick, Jerome Lidz, and Karla Alderman.

Eric S. DeFreest, of Calkins & Calkins, Eugene, filed the brief for petitioner-respondent Eugene Water & Electric Board.

Jeffrey M. Batchelor, of Markowitz, Herbold, Glade & Mehlhaf, P.C., Portland, filed the brief for respondent-respondent State of Oregon. With him on the brief was Jennifer H. Holcomb.

James P. Baker, *pro hac vice*, of Orrick, Herrington & Sutcliffe LLP, San Francisco, argued the cause and filed the brief for respondent-respondent State of Oregon, Public Employees Retirement Board. With him on the brief was Townsend Hyatt, Portland.

Daryl S. Garrettson, of Garrettson, Goldberg, Fenrich and Makler, McMinnville, filed a brief on behalf of *amici curiae* Oregon Council of Police Associations and Oregon State Police Officers' Association. With him on the brief was John Hoag, Eugene.

Scott A. Jonsson, Brian R. Talcott, and James A. Hillas of Dunn Carney Allen Higgins & Tongue LLP, Portland, filed a brief on behalf of *amici curiae* Sartain Strunk et al, Evans et al, and Burt et al.

DE MUNIZ, J.

Durham, J., dissented and filed an opinion in which Riggs, J., joined.

## DE MUNIZ, J.

These consolidated appeals, over which we have exclusive jurisdiction,[1] require us to determine whether a circuit court properly vacated and remanded certain orders that the Public Employees Retirement Board (PERB) issued in 1998 and 2000.[2] PERB issued two orders establishing, for the years 1998 and 2000, the amounts that public employers were required to contribute into the Public Employees Retirement Fund (the fund), and one order allocating the fund's 1999 earnings among various accounts within the fund. The parties present several arguments pertaining to the trial court's judgment vacating and remanding the orders. For the reasons that follow, however, we conclude that these appeals are moot, and we therefore dismiss them.

Because this case involves PERB's administration of the Public Employees Retirement System (PERS), we explain briefly how PERS has operated and the events leading up to this litigation.

Oregon has provided its public employees with a retirement plan since 1945. Funding for the plan comes from three sources: employee (member) contributions, employer contributions, and investment earnings on those contributions. PERB administers PERS and acts as trustee for the fund. Among other things, PERB sets employer contribution rates and allocates annual earnings to employer and member accounts and to reserves.

Several employers, including the City of Eugene, timely challenged PERB orders issued in 1998 and 2000 that increased employer contribution rates, and a PERB order issued in March 2000 that credited 1999 earnings to certain

---

[1] Pursuant to Oregon Laws 2003, chapter 537, section 1, the Court of Appeals transferred these cases to this court.

[2] The PERB orders at issue here are orders in other than contested cases. ORS 183.484 provides, in part:

"Jurisdiction for judicial review of orders other than contested cases is conferred upon the Circuit Court for Marion County and upon the circuit court for the county in which the petitioner resides or has a principal business office. Proceedings for review under this section shall be instituted by filing a petition in the Circuit Court for Marion County or the circuit court for the county in which the petitioner resides or has a principal business office."

member accounts. The trial court consolidated the various challenges. The City of Eugene Water and Electric Board (EWEB) nonetheless sought independently to raise its own legal challenges to the orders. PERB moved, *inter alia*, for the trial court to dismiss EWEB's petition for judicial review pursuant to ORCP 21 A(3).[3] The trial court granted that motion. Several PERS members also intervened in the litigation both to raise their own challenge to the PERB order issued in March 2000 that credited 1999 earnings and to defend PERB's 1998 and 2000 employer contribution rate orders.

As relevant here, employers argued that PERB (1) unlawfully had failed to fund a contingency reserve account, which caused employer contribution rates to increase; (2) unlawfully had required employers to match the earnings in members' variable annuity accounts; (3) unlawfully had failed to adopt and implement updated actuarial factors when calculating member retirement benefits; and (4) had abused its discretion by crediting Tier One members'[4] regular accounts in excess of the assumed earnings rate while failing to fund adequately the contingency reserve account, the Benefits-in-Force reserve account, and the gain-loss reserve account.

With respect to those claims, the trial court concluded that (1) PERB unlawfully had failed to maintain a contingency reserve account; (2) PERB unlawfully had required employers to match the earnings in members' variable annuity accounts;[5] (3) PERB unlawfully had failed to

---

[3] ORCP 21 A provides, in part:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a complaint, counterclaim, cross-claim or third party claim, shall be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion to dismiss: * * * (3) that there is another action pending between the same parties for the same cause[.]"

[4] A Tier One member is a PERS member who joined PERS before January 1, 1996.

[5] The trial court's ORCP 67 B judgment explained:

"2. ORS 238.260(12) and ORS 238.300(2)(a) require that the PERB initially calculate the Variable Annuity Account earnings on the same basis as the regular annuity account earnings, and both the regular account and Variable Account annuities must then be compiled together to determine the regular service retirement allowance under all retirement alternatives before that retirement allowance is subjected to ORS 238.260(12)'s adjustment for participation in the variable. The PERB has misinterpreted and violated the requirements of ORS 238.260(12) and ORS 238.300(2)(a) by requiring

adopt and implement updated actuarial factors when calculating member retirement benefits; and (4) PERB had abused its discretion by crediting Tier One members' regular accounts with 20 percent earnings for 1999.

Intervenors' only challenge respecting the PERB orders at issue was to PERB's March 2000 order crediting 1999 earnings. However, their answer to employers' complaint set out a series of affirmative defenses in support of PERB's 1998 and 2000 employer contribution rate orders. With respect to intervenors' challenge to the 2000 earnings allocation order, intervenors argued that PERB had credited to employer accounts some of the earnings generated by members' variable accounts in violation of PERB's fiduciary duties to members.[6] The trial court agreed. In its ORCP 67 B judgment, the trial court concluded that, because ORS 238.250 (1999)[7] required all earnings, not otherwise statutorily required to be allocated for a specific purpose, to be credited to member accounts, PERB had breached the statutory contract, and thus its fiduciary duty, when it allocated earnings on members' variable accounts to employer accounts.

The trial court therefore vacated each of the challenged orders and remanded them to PERB with instructions that PERB issue new orders consistently with the court's judgment. PERB, intervenors, and EWEB appealed. Additionally, PERB sought from both the trial court and, later,

---

Petitioners to match the amount of earnings allocated to members' Variable Annuity Accounts."

[6] The trial court's Opinion and Order on Cross Motions For Summary Judgment explains:

"In 1999 PERB began a rule making process to respond to employer concerns that they did not have access to participate in the Variable account, while they had responsibility, under PERB's construction of the applicable statutes, to match the employee's Variable earnings. At the Board meeting in November, 1999 PERB adopted the Employer-in-Variable rule with an effective date of December 31, 2000 in order 'to allow the Oregon Investment Council sufficient time to move additional assets into the Oregon Equity Fund in anticipation of greater earnings distribution from that fund due to the employer match, to provide additional earnings sufficient to avoid a reduction in earnings distribution to members.' "

[7] ORS 238.250 (1999) provided:

"The board shall provide for an individual account for each active and inactive member of the system. The account shall show the amount of the member's contributions to the fund and the interest which they have earned. The board shall furnish a written statement thereof upon request by any member or beneficiary of the system."

the Court of Appeals, a stay of the trial court's judgment. Both courts denied that request.

After the trial court entered its judgment and the parties had taken their appeals, the legislature passed several amendments to the statutes governing PERS that altered significantly the structure of PERS and the manner in which PERB would administer the fund in the future. As noted, the legislation provided, in part, that this court would have exclusive jurisdiction to decide these cases, and it directed the Court of Appeals to transfer them to this court.

After the Court of Appeals transferred the cases to this court, and while the cases still were pending before this court, PERB and the various employers entered into a settlement agreement in which PERB agreed to issue, by July 1, 2004, new orders that would comply with both the trial court's judgment and the terms of the legislative amendments. More specifically, the agreement provided, in part:

> "1. PERB will implement the judgment entered in *City of Eugene v. State of Oregon, Public Employees Retirement Board* ('the judgment') as follows, except in the event of a supervening change in law (such as by a legislative enactment or further court order):
>
> "1.1. No later than July 1, 2004, PERB will adopt a rule governing the calculation of money match benefits for members participating in the variable account program that conforms to [the] July 2001 Court order in the *City of Eugene*. * * * PERB will apply its money match calculation rule to retirements occurring on or after the earlier of the date that the rule is adopted or July 1, 2004.
>
> "1.2 PERB will implement the judgment upholding Intervenors' challenge to the 'employer-in-variable' rule by transferring from employer accounts to the contingency reserve established by ORS 238.670(1) the amount determined by the PERS actuary to have been improperly credited to

employer accounts according to the judgment. * * *

"1.3 The new 1999 earnings allocation order described in paragraph 1.2 above will provide that the appropriate earnings allocation to Tier [One] regular member accounts is 11.33 [percent], that [seven and one half percent] of the 1999 earnings should have been allocated to the contingency reserve established by ORS 238.670(1), and that the gain-loss reserve created by ORS 238.670(3) should have been funded to the full extent of the former PERB's policy to maintain a gain-loss reserve sufficient to credit the assumed interest rate to Tier [One] regular member accounts during a period of 30 months of [zero percent] earnings.

"1.4 PERB will henceforth comply with existing statutory directives concerning reserving practices and mortality tables as interpreted in the *City of Eugene* judgment and as amended by the reform legislation, except to the extent that such legislation is subsequently modified or repealed, or except to the extent that PERB is ordered to do otherwise by a court of competent jurisdiction.

"1.5 PERB will direct its actuary to recalculate employer contribution rates for Petitioners * * *. The actuary will be directed to calculate those contribution rates as if PERB's practices and actuarial assumptions with respect to employer match of variable accounts, actuarial equivalency factors, reserving practices and the 'employer-invariable' rule had been consistent with the law as interpreted in the judgment and as if PERB had, for 1999, originally allocated earnings of 11.33 [percent] to Tier [One] regular member accounts, allocated [seven and one half percent] of earnings to the contingency reserve and had fully funded the gain-loss reserve pursuant to its policy

described above in paragraph 1.3. PERB will issue new contribution rate orders for the City of Eugene (including EWEB) and Lane County for 1998, 2000, and 2003, and for all other Petitioners for 2000 and 2003, consistent with the actuary's recalculations. * * *

"1.6    PERB will issue new employer contribution rate orders for all participating employers for 2003, no later than July 1, 2004, calculated to implement paragraphs 1.1, 1.2, 1.3 and 1.4 above."

That agreement reflects PERB's implementation of the trial court's judgment, which was final until an appellate judgment issued.[8] Pursuant to that agreement, PERB has issued

---

[8] ORS 18.082 provides:

"(1) Upon entry of a judgment, the judgment:

"(a) Becomes the exclusive statement of the court's decision in the case and governs the rights and obligations of the parties that are subject to the judgment;

"(b) May be enforced in the manner provided by law;

"(c) May be appealed in the manner provided by law;

"(d) Acts as official notice of the court's decision; *and*

"(e) May be set aside or modified only by the court rendering the judgment or by another court of tribunal with the same or greater authority than the court rendering the judgment."

(Emphasis added.) Although ORS 19.270 confers jurisdiction over "the cause" to the appellate courts once a notice of appeal is filed, that statute explains that the trial court "retains jurisdiction in the matter" for purposes of "[e]nforcing the judgment, subject to any stay of the judgment[,]" ORS 19.270(1)(b). More importantly, ORS 19.330 provides:

"The filing of a notice of appeal does not automatically stay the judgment that is the subject of the appeal. A party may seek to stay a judgment in the manner provided by [law]."

In this case, PERB sought a stay of the trial court's judgment from both the trial court and the Court of Appeals. Both courts denied that motion.

It is at least arguable that, in the absence of a statute like ORS 19.270(1), on judicial review of an agency order, the administrative agency retains plenary authority to issue a new order affecting the subject matter of the judicial review. However, we need not resolve that question for, as ORS 18.082(1)(b), ORS 19.330, and ORS 19.270(1)(b) make clear, a circuit court having entered a judgment, in the absence of a stay of that judgment, a party would be entitled to invoke the circuit court's jurisdiction to enforce the judgment. The dissent does not explain why, if a court of law could force the agency to comply with the judgment during the pendency of an appeal, the agency is powerless to do so voluntarily.

new employer contribution rate orders for 1998 and 2000, and a new order crediting 1999 earnings.[9] PERB's actions in entering the new orders are now the subject of other litigation that is not before this court.

After entering into that agreement, employers moved to dismiss the appeals, arguing that the settlement agreement had rendered the underlying controversy moot. PERB later joined that motion.

Intervenors and EWEB raise various challenges to the manner in which the trial court resolved several issues. Intervenors raise 11 assignments of error, all of which relate to their defense of PERB's 1998 and 2000 employer contribution rate orders:

(1) "The trial court erred in granting petitioners' motion for summary judgment on Count Two of the First Claim for Relief and in ruling that PERB violated ORS 238.260(12)[10] and ORS 238.300(2)(a) by requiring employers to match all earnings allocated to members' variable annuity accounts."

(2) "The trial court exceeded its limited jurisdiction under the Administrative Procedures Act when it declared invalid OAR 459-005-0055."

(3) "The trial court erred in ruling that PERB applied an invalid administrative rule when it failed to update mortality tables to maintain 'actuarial equivalency.' "

(4) "The trial court erred in denying intervenors' motion to compel production of legal opinions advising PERB on PERS administration relating to actuarial factors."

(5) "The trial court erred in granting summary judgment on the fourth claim for relief, ordering PERB to fund a contingency reserve."

(6) "The trial court erred when it ruled that PERB abused its discretion in failing to allocate out of the 1999 earnings

---

[9] By virtue of that settlement, intervenors' quarrel with the trial court's ruling has become abstract—no opinion by an appellate court respecting that topic could affect the viability of PERB's new orders.

[10] For purposes of this opinion, the statutory provisions referred to in both intervenors' and EWEB's assignments of error are not relevant, and we therefore do not set them out in their entirety.

an amount sufficient to meet a 30-month funding goal for the gain/loss reserve account."

(7) "The trial court erred in ruling that PERB abused its discretion by its allocation of 1999 earnings to employee accounts."

(8) "The trial court erred in admitting evidence of conditions which occurred after the 1998 and 2000 rate orders."

(9) "The trial court erred in granting petitioners leave to file a third amended petition."

(10) "The trial court erred in refusing to allow additional evidence in response to the third amended petition."

(11) "The trial court erred in denying intervenors' motion for new trial."

In addition, EWEB raises the following three assignments of error, all of which are premised on whether EWEB may proceed in this litigation separately from the other employers:

(1) "The trial court erred in allowing the PERB motion to dismiss EWEB as a party pursuant to ORCP 21 A(3)."

(2) "The trial court erred in denying EWEB's motion for partial summary judgment that the PERB had violated ORS 238.300(2)(b)(A) by distributing money match pensions to members not entitled to a pension under the original Retirement Act before its revision in 1967 and in concluding the PERB did not misinterpret the requirements of ORS 238.300(2)(b)(A) when PERB required Petitioners to match earnings on members' regular accounts."

(3) "The trial court erred in denying EWEB's motion for partial summary judgment that PERB's distribution of income in excess of the assumed interest rate violated the statutory mandates of ORS 238.670(2) and by interpreting ORS 238.670(2) to allow the PERB to exercise discretion in the distribution of earnings."

Employers and PERB maintain their argument that, because PERB has issued new orders pursuant to the settlement agreement, and because those new orders replace the old, vacated orders, the appeals are moot. Intervenors respond that the appeals are not moot because this court could conclude that the trial court did not correctly interpret the relevant statutes, reverse the trial court's judgment, and

"revive" the 1998 and 2000 employer contribution rate orders. We initially denied employers' and PERB's motions to dismiss without prejudice. After further consideration, and based on intervening events and proceedings, we agree with employers and PERB.[11]

We begin by noting the procedural posture of this case. The following events have occurred since the actions were filed: (1) the trial court vacated and remanded to PERB all the challenged orders, with intervenors prevailing in their challenge to the 2000 earnings allocation order; (2) PERB, intervenors, and EWEB filed appeals of the trial court's judgment in the Court of Appeals; (3) the legislature amended, significantly, the statutes governing PERS; and (4) while the appeals were pending in this court, PERB and employers settled, agreeing to comply with the trial court's judgment and the legislative amendments. The only "controversy" that remains, therefore, is intervenors' continued defense of the vacated, and replaced, 1998 and 2000 employer contribution rate orders.

The end result that intervenors seek is a return to the *status quo ante*, with this court reversing the trial court's judgment and, effectively, reviving the 1998 and 2000 employer contribution rate orders. However, as discussed earlier, PERB and employers' decision to follow the terms of the settlement agreement has resulted in PERB's issuance of new orders that have superseded the orders at issue in these appeals. Thus, even if this court concluded that the trial court erred and issued a judgment granting intervenors the relief that they seek, that judgment would not affect the new orders that PERB has issued pursuant to the settlement agreement.

Further, the 2003 legislative amendments combined with this court's decision in *Strunk v. PERB*, 338 Or 145, 108 P3d 1058 (2005), resolved all but one of the substantive issues in these appeals. In *Strunk*, this court concluded that PERB exceeded its statutory authority when it adopted an

---

[11] Here, all employers challenged the same orders, and those challenges were based on the same theory, *viz.*, that PERB had administered the fund in a manner contrary to its statutory authority. EWEB's challenge is not distinct from that of the other employers and our conclusion that intervenors' challenge to the employer contribution rate orders is moot necessarily also disposes of EWEB's claims.

administrative rule providing that, with respect to certain members, it would not implement updated actuarial factors. 338 Or at 235-36. That conclusion disposes of intervenors' challenges to the trial court's conclusions respecting that rule. The court also concluded that certain petitioners in *Strunk* were not entitled to the production of documents containing legal advice that the Attorney General had given to PERB concerning actuarial factors. *Id.* at 156. In this court's view, those documents were not "relevant to any claim at issue[.]" *Id.* The court's disposition of that issue in *Strunk* applies here, and the trial court correctly denied intervenors' motion to compel production of those documents.

In addition, in *Strunk*, this court observed that ORS 238.670(1) requires PERB to fund a contingency reserve:

> "In years in which the earnings on the fund equal or exceed the guaranteed earnings rate, PERB statutorily is required to 'set aside * * * such part of the income as [PERB] may deem advisable, not exceeding seven and one-half percent of the combined total of such income, which moneys so segregated shall remain in the fund and constitute therein a reserve account.' "

*Id.* at 159 n 16. Based on that observation, we conclude that intervenors' challenge to that aspect of the trial court's judgment effectively was resolved in *Strunk*.

Finally, with respect to the gain-loss reserve account, the trial court concluded specifically that "PERB abused its discretion in allocating 1999 earnings of 20 [percent] to Tier One regular employee accounts." The court directed that, on remand, PERB was to recalculate its crediting decision to reflect an amount consistent with its 30-month funding goal[12] for the gain-loss reserve account. As this court observed in *Strunk* regarding that judgment:

---

[12] The significance of the 30-month funding goal was set out in the PERS Litigation Special Master's Written Report. There, the Special Master explained:

"In 1998, the OIC commissioned the Frank Russell Company to study its investment policies. The resulting reports (the Russell reports) were provided to PERB in late 1999. The Russell reports showed that market volatility likely would have a detrimental effect on the stability of the PERS system. Based on the Russell reports, PERS staff and the actuary recommended that PERB increase its goal for the gain-loss reserve from 18 months to 30 months' earnings at the assumed earnings rate—a reserve of 20 percent of current assets— as a means of stabilizing employer contribution rates. In February 2000, PERB adopted the 30-month goal."

"Pursuant to the trial court's judgment, the Fiscal Serv-ices Division (FSD) of PERS recalculated the credits to Tier One members' regular accounts for 1999 and concluded that, if PERB properly had funded the contingency and gain-loss reserves in 1999, the appropriate credit to mem-bers' regular accounts for that year would have been 11.33 percent. Before FSD presented that figure to PERB for final approval, however, the legislature requested that informa-tion directly from FSD. The legislature subsequently enacted the 2003 PERS legislation. Oregon Laws 2003, chapter 67, sections 9 and 10, *as amended by* Oregon Laws 2003, chapter 625, section 13, effectively codifying the 11.33 percent figure as the correct 1999 crediting decision."

338 Or at 216. The legislature also enacted Oregon Laws 2003, chapter 3, section 1, *as amended by* Oregon Laws 2003, chapter 67, section 5, which requires the gain-loss reserve account "to be fully funded with amounts determined by the board, after consultation with the actuary employed by the board, to be necessary to ensure a zero balance in the account when all [Tier One members] have retired[.]" That provision reflects a codification of PERB's 30-month funding goal for the gain-loss reserve account.

It follows that the only substantive issue presented in these appeals that has not been resolved by the interven-ing legislative amendments to PERS or by this court's deci-sion in *Strunk* is whether the trial court erred when it agreed with employers that PERB unlawfully had required employ-ers to match the earnings on members' variable accounts.[13] However, PERB and employers resolved that issue in the set-tlement agreement discussed earlier. Specifically, they agreed that PERB would make statutorily required adjust-ments to all service retirement allowances that would not cause employers to match earnings on variable accounts. As noted, PERB also has issued new employer contribution rate

---

[13] Specifically, employers had challenged PERB's calculation of members' serv-ice retirement allowances on the basis that, with respect to application of the "money match" calculation, *see Strunk*, 338 Or at 161 (explaining that calculation), PERB unlawfully had required employers to match earnings on members' variable accounts. In agreeing with employers, the trial court concluded that PERB must make certain adjustments, intended to reflect the performance of members' varia-ble accounts, to *all* service retirement allowances regardless of the type of calcula-tion used to compute those allowances.

orders pursuant to that agreement. Because PERB and employers have resolved the issue and PERB has issued new orders, we no longer are required to resolve that issue in these appeals.

Based on the foregoing, we conclude that these appeals are moot. The settlement agreement and the new orders that PERB has issued have removed any practical effect that a decision on the merits from this court could have on the rights of the parties. *See, e.g., Edmunson v. Dept. of Ins. and Finance*, 314 Or 291, 838 P2d 589 (1992) (concluding that challenge to superseded rules was moot, because new rule reflected present law). It follows that the case should be dismissed. *See Yancy v. Shatzer*, 337 Or 345, 97 P3d 1161 (2004) (moot case not justiciable); *Hamel v. Johnson*, 330 Or 180, 184, 998 P2d 661 (2000) (case is moot and must be dismissed if impossible for court to grant "effectual relief"); *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993) (cases in which court's decision no longer will have practical effect on rights of parties will be dismissed as moot).

The appeals are dismissed as moot.

**DURHAM, J.,** dissenting.

The law of Oregon regarding mootness that the majority cites is settled and not in dispute. This court will dismiss pending litigation as moot if a decision by the court "no longer will have a practical effect on or concerning the rights of the parties * * *." *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993). The party that seeks dismissal—here, the State of Oregon and several local government entities (public employers)—must carry the burden to establish that the case is moot. *Id.* at 407.[1] Because, in my view, the record in this case does not establish that a decision by this court on intervenors' petition for judicial review would have no practical

---

[1] As an analytical tool, the notion of a "burden" to establish mootness, as employed in *Brumnett*, may be less than helpful. The court must address and resolve the dispute before it only if the dispute is not moot. The court may examine all facts that pertain to that issue whether brought to the court's attention by any of the parties or some other source. If the facts demonstrate mootness, it matters little whether the moving party's evidentiary showing, viewed in isolation, is sufficient to support that conclusion.

effect on the parties, this dispute is not moot. I respectfully dissent from the majority's contrary conclusion.

As the majority correctly reports, two sets of administrative orders issued by the Public Employee Retirement Board (PERB) lie at the heart of this case. The first set consists of PERB orders, issued in 1998 and 2000, that established the rates of contribution that PERB required public employers to pay into the Public Employee Retirement System (PERS) for specified periods of time. The second was a single order that PERB issued in March 2000 that credited the system's 1999 earnings to member accounts. All the orders at issue are orders in other than a contested case that are subject to judicial review under ORS 183.484. Each order is a final order, within the meaning of ORS 183.310, which provides, in part:

"As used in this chapter:

"* * * * *

"(6)(a) 'Order' means any agency action expressed orally or in writing directed to a named person or named persons, other than employees, officers or members of an agency. 'Order' includes any agency determination or decision issued in connection with a contested case proceeding. 'Order' includes:

"* * * * *

"(b) 'Final order' means final agency action expressed in writing. 'Final order' does not include any tentative or preliminary agency declaration or statement that:

"(A)  Precedes final agency action; or

"(B)  Does not preclude further agency consideration of the subject matter of the statement or declaration."

Public employers petitioned for judicial review of the orders, arguing that PERB had misconstrued a number of statutes in issuing them. PERB disagreed and defended its orders. A number of public employees intervened and argued that public employers' assertions about PERB's construction of the pertinent statutes were erroneous.[2]

---

[2] Intervenors also contended that PERB had erred in construing and applying Oregon law in connection with the issuance of the March 2000 order that credited 1999 earnings.

The trial court determined that each of the challenged orders was erroneous in that they reflected a misinterpretation of law or an abuse of discretion by PERB.[3] Accordingly, the trial court vacated each order and remanded them to PERB with instructions to issue new orders "consistent with this judgment."

PERB and intervenors appealed the trial court judgment to the Court of Appeals.[4] While the appeals were pending, the legislature in 2003 revised several of the statutes that regulated PERS. This court's opinion in *Strunk v. PERB*, 338 Or 145, 108 P3d 1058 (2005), summarizes the operation of PERS both before and after those statutory amendments. The new legislation also transferred to this court jurisdiction over the appeal of the judgment in this case.

In February 2004, public employers (except EWEB) and PERS entered into an agreement that purported to settle the obligations of PERB under the terms of the trial court's judgment. (I use the term "purported" advisedly because, as I discuss below, intervenors challenge the authority of PERB to withdraw its final orders pursuant to the settlement agreement.) For example, the agreement required PERS to "implement the judgment" in this case by adopting new administrative rules and directives governing the calculation

---

[3] The majority summarizes the employers' challenges and the trial court's conclusions, as follows:

"As relevant here, employers argued that PERB: (1) unlawfully had failed to fund a contingency reserve account, which caused employer contribution rates to increase; (2) unlawfully had required employers to match the earnings in members' variable annuity accounts; (3) unlawfully had failed to adopt and implement updated actuarial factors when calculating member retirement benefits; and (4) had abused its discretion by crediting Tier One members' regular accounts in excess of the assumed earnings rate while failing to fund adequately the contingency reserve account, the Benefits-in-Force reserve account, and the gain-loss reserve account.

"With respect to those claims, the trial court concluded that (1) PERB unlawfully had failed to maintain a contingency reserve account; (2) PERB unlawfully had required employers to match the earnings in members' variable annuity accounts; (3) PERB unlawfully had failed to adopt and implement updated actuarial factors when calculating member retirement benefits; and (4) PERB had abused its discretion by crediting Tier One members' regular accounts with 20 percent earnings for 1999."

339 Or at 118-19 (footnotes omitted).

[4] One public employer, Eugene Water and Electric Board (EWEB), also appealed, but that appeal has no bearing on the mootness issue in this case.

of member benefits, the allocation of earnings, and the calculation of employer contribution rates, all in accordance with the judgment of the trial court. The agreement also required PERB to issue new orders that allocated earnings to member accounts and established employer contribution rates for the pertinent public employers for the years 1998, 2000, and 2003, again in accordance with the trial court's judgment.

Intervenors are not a party to the settlement agreement. They assert that the trial court erroneously construed a number of statutes in the course of requiring PERB to vacate its orders. Intervenors also assert that PERB lacks authority to vacate its final orders pursuant to the settlement agreement described above.

Public employers advance several arguments to establish that this dispute is now moot. First, they contend that intervenors do not expressly request the reinstatement of the 1998 and 2000 orders. On the contrary, intervenors assert that the trial court erred in determining that PERB had violated Oregon law and had abused its discretion in issuing the challenged orders. The logical consequence of those arguments, if accepted, is a rejection of the public employers' challenges to the orders and a reversal of the trial court's judgment that required PERB to vacate the orders in response to those challenges.

Public employers also contend that intervenors have no interest in the challenged orders because they are not parties to those orders and because the trial court's judgment did not require PERB to reduce or affect PERS member benefits. It is true that intervenors were not parties to the orders. However, intervenors contend that they are affected by the trial court's decision remanding the orders to PERB. I agree. The trial court's judgment requires PERB on remand to reallocate significant retirement fund earnings, for example, to fund contingency and gain-loss reserve accounts. But for that reallocation, the earnings that PERB's order addressed would be claimed by PERS members as part of the earnings on their contributions. Because intervenors have a legally

cognizable stake in the consequences of the trial court's judgment, they have a cognizable claim that the trial court erred in reversing and remanding PERB's orders.

Public employers further argue that

"the challenged orders never became final orders. Instead, they were timely challenged under ORS 183.484, and ultimately vacated by the circuit court before ever taking effect."

That contention reflects a misunderstanding of the concepts of administrative finality, judicial review, and appellate review.

Without question, PERB's first orders were final orders. They constituted final agency action expressed in writing. Indeed, only a final order is subject to judicial review under ORS 183.484. The fact that a party petitions the court for judicial review of an agency's final order under ORS 183.484 does not deprive the order of finality in any sense. Instead, the Administrative Procedures Act, ORS 183.310 to 183.750, states the procedures and standards that determine whether, on judicial review, the agency or the court has authority to take some action with respect to a final order.

Three of those statutes are pertinent to this discussion. First, ORS 183.484(4) provides, in part:

"At any time subsequent to the filing of the petition for review and prior to the date set for hearing, the agency may withdraw its order for purposes of reconsideration. If an agency withdraws an order for purposes of reconsideration, it shall, within such time as the court may allow, affirm, modify or reverse its order."

That statute authorizes an agency to withdraw its final order for purposes of reconsideration, but only if it does so prior to the date set for hearing by the circuit court. Second, ORS 183.484(5)[5] sets out the standards for judicial review of a

---

[5] ORS 183.484(5) provides:

"(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

final order and authorizes or requires specific forms of relief to remedy specific types of errors identified in a final order. Third, ORS 183.500 provides:

"Any party to the proceedings before the circuit court may appeal from the judgment of that court to the Court of Appeals. Such appeal shall be taken in the manner provided by law for appeals from the circuit court in suits in equity."

In contending that the challenged orders never became final, public employers attempt to establish PERB's authority to withdraw and nullify its final orders under its settlement agreement with the public employers. But PERB had no authority under ORS 183.484(4) to withdraw its final orders *after* the circuit court hearing. Moreover, the circuit court's judgment that vacated PERB's orders was subject to intervenors' right to appellate review of the circuit court judgment. ORS 183.500. Public employers have identified no source of authority that would permit PERB to vacate its final orders, either by its agreement with certain parties to do so or pursuant to the appealed judgment of the circuit court. The findings, conclusions, and remedies ordered by the circuit court in its judgment were subject to the appellate review that intervenors timely initiated. Thus, PERB and public employers were not entitled to treat the judgment as if it were legally operative.

The majority addresses intervenors' lack-of-authority claim only in a one-sentence footnote, which states:

"By virtue of that settlement, intervenors' quarrel with the trial court's ruling has become abstract—no opinion by

---

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

an appellate court respecting that topic could affect the viability of PERB's new orders."

339 Or at 123 n 9. That statement evades rather than answers intervenors' argument.

Intervenors' challenge to the trial court's decision here concerns the orders that PERB issued in 1998 and 2000. As noted, the record establishes that those orders are final and that intervenors have timely pursued their statutory right to seek appellate review of the trial court's judgment regarding those orders. The mootness controversy presented here turns solely on the viability of *those orders* and whether PERB has legal authority to nullify them, *not* whether the appellate court ruling could address "the viability of PERB's *new* order[,]" as the majority's footnote asserts. *Id.* (emphasis added). The majority's approach conveniently airbrushes away intervenors' challenge to PERB's authority to cancel its first orders without responding to that challenge on the merits. It is telling that the majority's one-sentence response cites no statute or case from this or any other court to support its refusal to decide whether PERB's post-settlement cancellation of its final orders was unauthorized and, thus, without legal effect. If intervenors are correct in their assertion that PERB lacked authority to vacate its final orders, then this dispute clearly is not moot.

Finally, the majority posits that it is unnecessary to resolve intervenors' claims on review because intervening legislative amendments to PERS and this court's opinion in *Strunk*, 338 Or 145, have resolved "all but one" of the issues that intervenors raise. 339 Or at 125. It is true, as the majority acknowledges, that the 2003 PERS reform legislation and this court's decision in *Strunk* address and resolve less than all the legal questions that intervenors raise here. Consistently with that view, the settlement agreement that public employers and PERB entered into recited that "[t]he reform legislation addresses *some* of the issues addressed in the *City of Eugene* case." (Emphasis added.)

I assume *arguendo* that the majority is correct in contending that the PERS reform legislation effectively has resolved some of the claims that intervenors raise, including

the dispute over updated actuarial factors, the need for further discovery of documents, and the gain-loss reserve account.[6] However, and even under the majority's theory, neither the 2003 PERS reform legislation nor *Strunk* resolves the dispute presented here respecting the trial court's conclusion that PERB had erred in requiring public employers to match the earnings allocated to members' variable annuity accounts. Intervenors continue to assert that PERB correctly interpreted the pertinent statutes on that subject and that the trial court's contrary interpretation of those statutes was erroneous.

The majority regards that dispute as moot because PERB and public employers incorporated into their settlement agreement a different formula for matching earnings on variable accounts and, after vacating the orders in dispute here, PERB issued new contribution rate orders. But that response on the majority's part simply fails to answer intervenors' challenge to PERB's authority to nullify the orders that are the basis for this appeal. If the final orders continue to have legal efficacy because, as intervenors argue, PERB had no authority to vacate them, then intervenors' challenge to the trial court's interpretation of the requirements for matching earnings on variable accounts presents a live controversy that this court should resolve. Consequently, I do not agree that this court should dismiss this proceeding at this time.

For the foregoing reasons, I respectfully dissent.

Riggs, J., joins in this dissenting opinion.

---

[6] The majority opines that *Strunk* effectively resolved the question whether PERB had a statutory duty under ORS 238.670(1) to fund a contingency reserve account. 339 Or at 126. In that respect, the parties disagreed about whether PERB violated the requirement in that statute to "set aside * * * such part of the income as [PERB] may deem advisable, not exceeding seven and one-half percent of the combined total of such income * * *" by choosing for several years to not direct any funds to the contingency reserve account. Contrary to the majority's assertion, *Strunk* did not address or decide that question and the disputed wording, quoted above, remains in the statute.